MUTUAL SAFETY INSURANCE CO. (HENSHAW v.). See Case No. 6,387.

MUXLOW (WIGHT v.). See Case No. 17,629.

MUZZY IRON WORKS (HUTCHINGS v.). See Case No. 6,952.

---

## Case No. 9,983.

### The M. W. WRIGHT.

[Brown, Adm. 290;[1] 3 Chi. Leg. News, 313.]

District Court, E. D. Michigan. March, 1871.

SEAMEN'S WAGES—ACT OF 1790 CONSTRUED—PROCEEDING BY SUMMONS—ATTACHMENT.

1. The provisions of section 6 of the merchant seamen's act of 1790 [1 Stat. 131], with respect to the recovery of wages, apply only to the classes of vessels enumerated in the first section of the act.

2. The proceedings by summons to the master, provided for in section 6, are cumulative and op-

---

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

tional, and the party may resort to an attachment in the first instance.

[Approved in The Waverly, Case No. 17.301. Cited in Murray v. The F. B. Nimick, 2 Fed. 88; The Edwin Post, 6 Fed. 208; The Frank C. Barker, 19 Fed. 334.]

On exception to answer, and motion to expunge.

The libel was for seaman's wages. The answer, by its first, second, and third allegations, ignored the hiring of libellants, the rate of wages, and the rendering of the services as alleged in the libel, but on information and belief, disputed the validity of libellant's claim, and in general terms denied the jurisdiction of the court. The fourth allegation of the answer was in the following words: "Fourth: These respondents allege, upon information and belief, that the said steamer, during the season of 1870, was employed in running from the port of Bay City, Michigan, to the port of Pine River, Michigan, making the round trip from said Bay City to said Pine River and return once in each twenty-four hours, and that during said season she made no trip or voyage except between said ports as aforesaid; that since on or about the 4th day of August last, said steamer has been tied up and remained idle at the port of Bay City aforesaid, until about November 1st, 1870, and during that time made no trip or voyage whatever, and that none of the preliminary steps or proceedings provided for and required by the sixth section of the act of congress, passed the 20th day of July, A. D. 1790, entitled 'An act for the government and regulation of seamen in the merchant service,' has ever been taken, or complied with by the said libellants, or any person on their behalf; and these respondents therefore submit that the said libellants ought not to have or maintain their said libel, and they pray that they may be allowed to have the same benefit of this objection and defense as if the same had been especially pleaded to the jurisdiction of this court in this proceeding." The exception and motion to expunge related solely to this fourth allegation, and were based upon the alleged reason that the allegations of said article "set forth no defense to said libel or any part thereof."

H. B. Brown, for libellant.

Hoyt Post, for claimant.

LONGYEAR, District Judge. The questions discussed upon the argument of the exception and motion, and which are for decision, are: 1. Does this case fall within the purview of section 6 of the act of 1790 (1 Stat. 131)? 2. If the case is within the purview of said section, then do the provisions of the section relating to commencement of suits by seamen for recovery of wages, supersede the law in force at the time the act was passed, or are those provisions merely cumulative and optional?

Section 6 is in the following words: "That every seaman or mariner shall be entitled to demand and receive from the master or commander of the ship or vessel to which they belong," (he belongs) "one-third part of the wages which shall be due him at every port where such ship or vessel shall unlade and deliver her cargo before the voyage be ended, unless the contrary be expressly stipulated in the contract; and as soon as the voyage is ended, and the cargo or ballast be fully discharged at the last port of delivery, every seaman or mariner shall be entitled to the wages which shall be then due according to his contract, and if such wages shall not be paid within ten days after such discharge, or if any dispute shall arise between the master and seamen or mariners, touching the said wages, it shall be lawful for the judge of the district" (or a commissioner appointed by the circuit court, as amended by the act of August 23, 1842,—5 Stat. 516), "where the said ship or vessel shall be, or in case his residence be more than three miles from the place, or of his absence from the place of his residence, then for any judge or justice of the peace, to summon the master of such ship or vessel to appear before him to show cause why process should not issue against such ship or vessel, her tackle, furniture, and apparel, according to the course of admiralty courts, to answer for the said wages; and if the master shall neglect to appear, or appearing, shall not show that the wages are paid, or otherwise satisfied or forfeited, and if the matter in dispute shall not be forthwith settled, in such case the judge" (commissioner), "or justice, shall certify to the clerk of the court of the district, that there is sufficient cause of complaint whereon to found admiralty process, and thereupon the clerk of such court shall issue process against the said ship or vessel, and the suit shall be proceeded on in the said court and final judgment be given according to the course of admiralty courts in such cases used; and in such suit all the seamen or mariners (having cause or complaint of the like kind against the same ship or vessel), shall be joined as complainants; and it shall be incumbent on the master or commander to produce the contract and log-book, if required, to ascertain any matters in dispute; otherwise, the complainants shall be permitted to state the contents thereof, and the proof of the contrary shall lie on the master or commander; but nothing herein contained shall prevent any seaman or mariner from having or maintaining any action at common law for the recovery of his wages, or from immediate process out of any court having admiralty jurisdiction, wherever any ship or vessel may be found, in case she shall have left the port of delivery where her voyage ended, before payment of the wages, or in case she shall be about to proceed to sea before the end of the ten days next after

the delivery of her cargo or ballast." I have quoted this section in full for the reason that there are expressions interspersed all through it plainly indicating to my mind the true interpretation to be given of it. The act is entitled "An act for the government and regulation of seamen in the merchant service." Section 1 provides that "every master or commander of any ship or vessel bound from a port in the United States to any foreign port, or of any ship or vessel of the burden of fifty tons or upwards, bound from a port in one state to a port in any other than an adjoining state, shall, before he proceed on such voyage, make an agreement in writing, or in print, with every seaman or mariner on board such ship or vessel," etc. Then, after providing what shall be the prices or wages to be paid by any master or commander to every seaman or mariner he shall carry out "without such contract or agreement being first made and signed," and for a forfeiture by such master or commander of twenty dollars for each seaman or mariner so carried out, section 1 closes as follows: "And such seaman or mariner, not having signed such contract, shall not be bound by the regulations, nor subject to the penalties and forfeitures, contained in this act." Now, it is apparent, that if section 6 is intended to provide for the same class of cases as is specified in section 1, then the case under consideration does not fall within the purview of section 6, because the vessel was not a vessel "bound from a port in the United States to any foreign port," nor "from a port in one state to a port in any other than an adjoining state."

Mr. Sedgwick, in his treatise on Statutory and Constitutional Law (page 237) says, "It is an ancient and well settled rule, that where any cause of doubt arises, although apparently the doubt attaches only to a particular clause, the whole statute is to be taken together, and to be examined, to arrive at the legislative intent." Applying this rule to the act in question, we find that by section 1 a certain contract or agreement is required to be entered into between the master or commander and the seamen, and the class of vessels and kind of voyages defined to which that requirement shall apply. By a subsequent part of the same act (section 6 above quoted), we find certain rights conferred upon seamen and mariners as to demanding and receiving wages during the voyage, and certain regulations prescribed for the collection of what may be due them on the termination of the voyage, by the express reference to "the voyage," and "the contract." If section 6 stood by itself—if it was all there was of the act—the language used, "the voyage," and "the contract," would at once suggest the idea of something lacking, and an incompleteness of expression and meaning. What "voyage?" what "contract?" We might infer, and should be under the necessity of inferring,

however great a grammatical inaccuracy, it would involve, that it meant any voyage in which such ship or vessel was or had been engaged, and any contract relating to such voyage. But when we find section 6 embodied in an act in other parts of which a certain class of voyages are defined, and a certain contract is prescribed and required to be entered into, the meaning of the language used in section 6 at once becomes plain, full, and consistent, and we are not only under no necessity of resorting to inference, but are not allowed to do so under the well settled rule of construction above laid down. Sections 1 and 6 are but parts and parcels of one general system adopted by congress for the government and regulation of seamen in the merchant service (as expressed in the entitling of the act) in the class of cases therein specified. It is foreign to the plain object and intent of the act, and it is unnecessary, unnatural, and far fetched to attempt to put upon section 6 any other construction. Section 6, standing alone, is also incomplete and inconsistent in another respect, but which incompleteness and inconsistency not only entirely disappear, but the provisions of that section become harmonious and perfect when interpreted in the light of the last clause of section 1. Thus, the idea of the existence of a written or printed contract is so impressed upon section 6 by the language used throughout, that the rights of seamen prescribed by, and the procedure provided for the enforcement of such rights, can hardly be conceived of under said section, in a case in which there is no such written or printed contract. It is impossible to read the section without that impression being produced upon the mind. It is spoken of as "the contract," and "his contract," as containing express stipulations, as determining the amount due, as something to be produced, and of which the contents may be stated; and it is so spoken of in the same manner and evidently in the same sense as it is in every other part of the act, and in such parts, too, as without doubt relate to the written or printed contract prescribed in section 1. Therefore, standing alone as a law to apply to all cases of collection of seamen's wages, the section is incomplete and inconsistent.

Now let us interpret section 6 as a part of a system of which section 1 also constitutes a part. The last clause of section 1 provides as follows: "And such seaman or mariner, not having signed such contract, shall not be bound by the regulations, nor subject to the penalties and forfeitures contained in this act." We can now see clearly why section 6 should, and is consequently made to cover only such cases as arise upon written or printed contracts, and why it makes no provision for any other class of cases. It is because, and only because, by the provisions of the clause of section 1 above quoted, seamen not signing such contract are not subject to any of the provisions of the act of which section 6 is a part. Interpreting section 6 then as a

part of one system, of which section 1 is also a part, it again becomes complete, harmonious and consistent. See, also, Cooley, Const. Lim. 55, 57.

I have been referred by counsel to no adjudicated cases involving the point under consideration, and it is believed there are none reported. Judges Betts, Conkling, and Benedict have alluded to it, however, in their several treatises on admiralty practice. Judge Betts (Betts, Adm. 67) adopts the construction that the provisions of section 6 refer exclusively to the class of cases specified in section 1. Judge Conkling (2 Conk. Adm. 68) expresses a doubt, and on account of such doubt, and for reasons based upon certain provisions of the act of February 26, 1845 [5 Stat. 726], extending the jurisdiction of the district courts to certain cases arising on the Lakes, says he had applied the provisions of the sixth section indiscriminately to all vessels embraced by the act of 1845; that is to vessels of twenty tons burden and upwards. He does not discuss the question at all independently of the provisions of the act of 1845, and it is quite apparent that his doubt as to the true interpretation of section 6, and his disagreement from Judge Betts in his practice under it, arose more on account of the difficulties he thought he perceived in the application of Judge Betts' interpretation of section 6 to certain cases arising under the act of 1845, than to anything found in section 6 independently of the act of 1845. Saying nothing of the propriety or soundness of resorting to an act of congress passed fifty-five years after a former act in order to arrive at the legislative intent of such former act, I have simply to observe that, it now being conceded that the act of 1845 is obsolete, and that there is no distinction between the jurisdiction of the admiralty on the Lakes and on tide water, it is to be presumed that that learned judge would now adopt the same reasonable interpretation of section 6 as that adopted by Judge Betts, and would conform his practice to such interpretation. Mr. Benedict (Ben. Adm. 507) goes a little further than Judge Conkling. He says, speaking of the practice in cases for collection of seamen's wages, as founded on the act of 1790: "This is believed to embrace all vessels not in the national naval service. The first three sections of the act relate to vessels and voyages of a particular character, but other sections of the act embrace 'any ship or vessel,' 'any seaman or mariner,' and the careful use of different phraseology for different purposes in the different sections, shows that the language, in every case, was intended to have its appropriate force." But then in this immediate connection the learned judge adds: "The law as administered under this act in the Southern district of New York, will be found very fully laid down in Betts' Practice, pages 59 to 68." Although the learned judge comments somewhat further upon the practice as adopted by Judge Betts, he nowhere alludes to the difference of views between them, as to the class of cases to which section 6 applies. This circumstance, as well as others which become apparent to any one examining the matter closely, such as the fact that the reference made is not to section 6 specially, but generally to "other sections of the act" (other than the first three sections), while the question arises upon section 6 alone; also, that the language quoted by him as the words of the act upon which he bases his opinion, are inaccurate as applied to section 6, and the more important fact that he fails entirely to consider the language quoted, or any like language used in section 6, in connection with and in the light of the context, all tend strongly to show that this learned judge and author did not bring to bear upon the question that close scrutiny and intelligent discrimination which usually characterize his writings and opinions. The subject-matter of section 6 is introduced as follows: "That every seaman or mariner" (general terms, it is true) "shall be entitled to demand and receive from the master or commander of the ship or vessel to which they" (he) "belongs, one-third part of the wages which shall be due to him at every port where such ship or vessel shall unlade and deliver her cargo before the voyage" (qualification No. 1—what voyage? See section 1) "be ended, unless the contrary be expressly stipulated in the contract" (qualification No. 2—what contract? See section 1). And so throughout the whole section qualifications occur which can be satisfactorily explained and understood only by reference to section 1, and by the application of those old and well-settled canons of interpretation and construction of statutes to which I have already alluded.

Upon the whole, therefore, I am of the opinion, as to the first question stated, that the provisions of the sixth section of the act of 1790, for the government and regulation of seamen in the merchant service (1 Stat. 131), are to be considered as referring exclusively to those voyages preparatory to which the master or commander is required, by the first section of the act, to make an agreement in writing with the seamen. From this it follows that the voyage or voyages in which the wages claimed by the libellants in this case are alleged to have been earned, not being voyages from a port in the United States to some foreign port, or from a port in one state to a port in any other than an adjoining state, as specified in section one of the act, but, on the contrary, to and from ports in the same state, the case does not fall within the purview of section 6; and hence that the exception to article 4 of the answer is well taken.

I am also of opinion, under the second question stated, that the proceedings prescribed by section 6 are merely cumulative and optional; and consequently, even if the case were within the purview of section 6, the exception would be well taken. But as the exception is disposed of upon the first question, I shall

not enter into any extended discussion of the second. It is an old and well-settled rule of construction, that "where a right or remedy exists at common law, and a statute is passed giving a new remedy, without any negative, express or implied, upon the old common law, the party has his election either to sue at common law, or to proceed upon the statute." Sedg. St. & Const. Law, 93, 125, 401, 402, and the numerous cases cited. This rule is applicable to the remedies under the maritime law as well as the common law. When the act of 1790 was passed, it was lawful for seamen to commence suit in rem in the admiralty by libel, and arrest the vessel in the first instance. The act of 1790 simply makes it lawful, in certain specified cases, to proceed by summons in the first instance, as preliminary to the libel and arrest. There is no provision expressly negativing the old law, and the language used in conferring the right to such new proceeding is certainly very far from implying such negative. The rule of construction above quoted, therefore, applies with its full force. This same rule of construction has been applied in numerous cases to another branch of the act of 1790, viz., that relating to desertion of seamen; and it may be now regarded as well settled that the maritime law of desertion is not superseded by the statute, notwithstanding the latter defines and prescribes punishment for desertion in some respects different from the offense and its punishment as defined by the former; and hence it is optional with the party injured to proceed under the maritime law, or under the statute. I can see no good reason why the same rule should not apply to the provisions of section 6, so far as it prescribes a mode of procedure for collection of seamen's wages.

I hold, therefore, that the preliminary proceedings by summons, &c., prescribed by section 6 of the act of 1790, are cumulative, and in addition to the ordinary proceedings by libel, according to the admiralty practice, and may be resorted to or not at the option of the libellant. See Judge Sprague's opinion in the case of The William Jarvis [Case No. 17,697], in which this question is fully and ably discussed, and the above views and conclusions are fully maintained. The exceptions are allowed. Motion granted.